Carol VAN STRUM, Plaintiff,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY; Lee M. Thomas, Administrator, Defendant.

Civ. No. 87-6031-E.

United States District Court, D. Oregon.

Nov. 4, 1987.

Ralph A. Bradley, Bradley & Gordon, Eugene, Or., Susan Hogg, Newport, Or., for plaintiff.

Charles H. Turner, U.S. Atty., Judith D. Kobbervig, Asst. U.S. Atty., Portland, Or., for defendant.

## OPINION

PANNER, Chief Judge.

This suit was filed pursuant to the Freedom of Information Act, 5 U.S.C. § 552, to compel the United States Environmental Protection Agency (EPA) to release to plaintiff Carol Van Strum certain studies relating to dioxin. Both parties filed motions for summary judgment or partial summary judgment. Plaintiff has also moved for a stay to allow discovery and for an order prohibiting government destruction of evidence. I grant plaintiff's motion for discovery and stay the case.

## BACKGROUND

Plaintiff and her husband, Paul Merrell, have a long-standing personal and professional interest in contamination of the environment by the ultra-toxic chemical dioxin.[1] Dioxin, known as 2,3,7,8–tetrachlorodibenzo-p-dioxin (TCDD), is a chemical contaminant formed in certain manufacturing processes. It is said to be the most toxic simple organic molecule known. Contamination is measured in parts per trillion. A threshold limit below which no toxic effects occur has never been demonstrated. *See generally Citizens Against Toxic Sprays v. Bergland,* 428 F.Supp 908, 927–32 (D.Or. 1977). To deal with this problem, EPA established a "Dioxin Strategy" and a Dioxin Strategy Task Force. In 1984 the EPA received a special appropriation from Congress to conduct the National Dioxin Study (NDS), which was to determine the extent of dioxin contamination in the environment. Seven categories, or tiers, were established to facilitate an orderly investigation. They range from the most likely

contaminated sites to least likely, as follows:

**Tier 1:** 2,4,5–trichlorophenol (2,4,5–TCP) production sites and associated waste disposal sites.

**Tier 2:** Sites and associated waste disposal sites where 2,4,5–TCP was used as a precursor to make pesticidal products.

**Tier 3:** Sites and associated waste disposal sites where 2,4,5–TCP and its derivative were formulated into pesticidal products.

**Tier 4:** Combustion sources.

**Tier 5:** Sites where 2,4,5–TCP and pesticides derived from 2,4,5,–TCP have been or are being used on a commercial basis.

**Tier 6:** Sites where improper quality control on manufacturing of certain organic chemicals and pesticides could have resulted in the inadvertent formation of 2378–TCDD.

**Tier 7:** Control sites where contamination from 2378–TCDD is not suspected.

Preliminary data from the study indicated higher than expected levels of dioxin in paper products and in fish captured in the vicinity of paper mills. Consequently EPA and the pulp and paper industry jointly sponsored additional testing of paper products and the mills that produce them. *N.Y. Times,* Sept. 24, 1987, at 1.

The NDS was scheduled for completion and public release by December 31, 1985. EPA did not succeed in meeting that target date. On August 26, 1986, plaintiff filed a request with the EPA pursuant to FOIA which itemized eleven categories of records relating to the NDS. By letter dated September 22, 1986, plaintiff reiterated the request and indicated her intent to appeal if the documents were not forthcoming. On October 27, 1986, plaintiff filed an appeal with the EPA. On November 30, 1986,

---

**1.** They were parties in a series of cases to obtain relief against chemical spraying of the forests adjacent to their residence in western Oregon. *Citizens Against Toxic Sprays v. Bergland,* 428 F.Supp. 908 (D.Or.1977); *Save Our ecoSystems/Merrell v. Clark,* 747 F.2d 1240 (9th Cir. 1984). Plaintiff is the author of *A Bitter Fog: Herbicides & Human Rights* (1983). Plaintiff

and her husband are authors of *No Margin of Safety: A Preliminary Report on Dioxin Pollution and the Need for Emergency Action in the Pulp and Paper Industry* (1987). She states that the documents requested in this case are preparation for a treatise and series of articles on the history of dioxin as a political phenomenon.

plaintiff advised the U.S. Attorney of her intent to file suit. On December 8, 1986, EPA released some records but denied the request for the draft NDS. Plaintiff filed this lawsuit on January 22, 1987.[2]

The parties filed cross-motions for summary judgment in August 1987. On September 25, 1987, plaintiff filed a motion for a stay of proceedings, for discovery, and for an order barring destruction of evidence. Her request for stay was based on a large volume of documents anonymously sent to her from a source that evidently has access to records of the American Paper Institute, which represents the pulp and paper industry. The documents appear to support the existence of an agreement between EPA and the industry to suppress, modify or delay the results of the joint EPA/industry study or the manner in which they are publicly presented. Plaintiff contends that these documents evince the falsity of statements made by EPA affiants on issues central to this case.

### DISCUSSION

#### A. *Scope Of The Request.*

Plaintiff's motion to stay is based solely on issues arising out of the joint EPA/industry study. EPA contends that this study is beyond the scope of the August 26 request and therefore beyond the scope of this case. Therefore I must examine the request and construe its proper scope.

The FOIA requires government agencies to disclose documents "upon any request for records which reasonably describes such records." 5 U.S.C. § 552(a)(3). In *Dunaway v. Webster,* 519 F.Supp. 1059 (N.D.Cal.1981), the court construed this section as follows:

> Given the policy embodied in the FOIA requiring disclosure of information in government documents unless it falls within the reach of one of the specified exemptions, the agency should err on the side of liberally construing what material falls within the scope of the request....

The agency is obliged to release any information, subject to the specified exemptions, which relates to the subject of the request or which in any sense sheds light on, amplifies, or enlarges upon that material which is found in the same documents.

*Id.* at 1083. Congress has placed the burden of proof on the agency to sustain its action. 5 U.S.C. § 552(a)(4)(B). Plaintiff's requests included the following:

> 2. *Any and all reports which document the extent of environmental contamination in the U.S., studied under Tiers I through VII of the Dioxin Strategy, including but not limited to "The National Dioxin Study" report,* and all reports prepared by the Regions in conjunction with the program offices which summarize available information including analytical results for each site sampled, as well as any and all risk assessments relating to any of the above.
>
> 3. Any and all agency records which discuss or refer to any and all decisions to issue the National Dioxin Study as a series of reports rather than or before issuing a single comprehensive report.
>
> 4. For each site sampled under Tiers I through VII of the Dioxin Strategy *for which no final report has been prepared, the most recent draft report, memoranda, notes, etc. discussing and/or revealing analytical results* and/or the location of each site and/or any and all related risk assessments.

(Emphasis added.) Plaintiff's letter further elaborated:

> My request includes any and all appendices, annexes, or other materials attached or related to the requested records, as well as any other information which you believe may be of interest to me.

 EPA contends that the joint EPA/industry report concerning dioxin in paper products and at paper mills was part of plaintiff's second request dated March 4, 1987, but not part of the August 26, 1986

---

**2.** On March 4, 1987, plaintiff filed a second FOIA request which reiterated many of the items made in the August 26 request and added other items. Only the first FOIA request is the subject of this suit.

request. Indeed, plaintiff was aware of and specifically requested the joint report in the second request. However, a document need not be specified by name to be reasonably within the scope of a request. A later, more specific request does not somehow excise that material from the reasonable scope of an earlier request. Plaintiff submits a document that tends to show that the joint study was part of the NDS: a draft of a June 1986 "Quality Assurance Project Plan" is subtitled, "National Dioxin Study, USEPA/Paper Industry Cooperative Dioxin Screening Study." In addition, it is in accord with common sense that the joint study, which was precipitated by the findings of the NDS and was undertaken well in advance of final release of the NDS, falls well within plaintiff's first request as a study which "document[s] the extent of environmental contamination in the U.S., studied under Tiers I through VII of the Dioxin Strategy, including but not limited to 'The National Dioxin Study' report." I hold that the joint EPA/industry study is within the scope of the first request and, consequently, of this case because it "relates to, sheds light on, amplifies, or enlarges" the subject of that request. *Dunaway v. Webster*, 519 F.Supp. at 1083. I need not reach the issue of whether EPA implicitly consented to litigate the issues raised by plaintiff's second request, dated March 4, 1987.

## B. *Availability Of Discovery.*

Plaintiff urges that the materials sent to her from the anonymous source directly contradict the affidavits of at least two EPA affiants, James Cummings and Alexander McBride. James Cummings is the staff member of the EPA Dioxin Management Task Force responsible for the agency's response to FOIA requests. Alexander McBride is chief of the EPA Water Quality Analysis Branch of the Office of Water Regulations and Standards, and was responsible for coordinating EPA's response to the portion of the FOIA request dealing with the joint EPA/industry study. Plaintiff points to documents which tend to show that EPA officials have delayed or avoided complying with her requests at the

urging of the pulp and paper industry. She contends that the documents deserve credence because events as they actually transpired did so in accordance with the course of action outlined in those documents. Plaintiff contends that the documents show an explicit agreement between EPA and industry officials to forestall regulation of dioxin pollution and to forestall the adverse impact of publicity on the industry by withholding and downplaying information provided by EPA, specifically including a controlled management of EPA's response to this FOIA request. The documents indicate that plaintiff may have a valid concern regarding the credibility of some affidavit statements accompanying EPA's motion for summary judgment.

Plaintiff seeks discovery to pursue her questions regarding the validity of the EPA affidavits. In general, the scope of discovery in an FOIA case is limited to whether complete disclosure has been made by the agency in response to the request for information. *Niren v. Immigration and Naturalization Service*, 103 F.R.D. 10, 11 (D.Or.1984) (Frye, J.). On motions for summary judgment, the court may rely on affidavits to determine whether the agency has met its burden of proof. *Exxon Corp. v. Federal Trade Comm'n*, 466 F.Supp. 1088, 1093 (D.D.C.1978), *aff'd*, 663 F.2d 120 (D.C.Cir.1980). Summary judgment without discovery is appropriate where the plaintiff has made no showing of agency bad faith sufficient to impugn the agency affidavit. *Goland v. Central Intelligence Agency*, 607 F.2d 339, 355 (D.C.Cir. 1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). However, where plaintiff or the agency's response raises serious doubts as to the completeness and good faith of the agency's search, discovery is appropriate. *Exxon Corp. v. Federal Trade Comm'n*, 466 F.Supp. at 1094. I conclude that plaintiff in this case has raised sufficient questions as to the integrity of the EPA affidavits to warrant discovery. This case is stayed to permit discovery.

Plaintiff also seeks an order prohibiting destruction of records by the EPA. How-

ever, she presents no evidence that there is a reasonable possibility of such destruction. The motion for a protective order is denied.

## CONCLUSION

Plaintiff's motion for discovery is granted. This case is stayed to permit discovery. Plaintiff's motion for a protective order is denied. EPA's motion for summary judgment is denied for the reasons stated above. Plaintiff's motion for summary judgment is denied because it cannot be determined whether any of the requested documents should have been delivered.