892 F.2d 1048
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Carol VAN STRUM, Plaintiff-Appellant,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Defendant-Appellee.
 No. 88-4175.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 28, 1989.
Decided Jan. 4, 1990.
 
 Before SKOPIL, FERGUSON and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff Carol Van Strum filed a request pursuant to the Freedom of Information Act (FOIA) with the Environmental Protection Agency (EPA) for documents related to the EPA's study of dioxins. After exhausting administrative remedies, Van Strum brought this lawsuit under FOIA, requesting that the court compel EPA to disclose all requested documents. Van Strum and EPA filed cross-motions for summary judgment. After permitting discovery, the district court granted EPA's motion for summary judgment and denied Van Strum's, finding that EPA had produced all requested documents identified in Van Strum's motion for summary judgment. Van Strum now appeals, contending that the district court erred in granting summary judgment as it had no factual basis upon which to conclude that she has received all requested documents. We affirm in part and reverse in part.
 
 I.
 
 3
 Plaintiff Carol Van Strum, an author and free-lance writer with a special interest in the subject of dioxins, filed a Freedom of Information Act (FOIA) request in August 1986 ("FOIA Request") for Environmental Protection Agency (EPA) records relating to the National Dioxin Study (NDS) undertaken by EPA in early 1983. The NDS was part of an EPA National Dioxin Strategy, which EPA designed to respond to mounting evidence of environmental contamination by dioxins.
 
 
 4
 In her FOIA Request, Van Strum sought eleven discrete categories of records. Dissatisfied with EPA's processing of her FOIA request, she filed an administrative appeal in November 1986. Van Strum's administrative appeal was dismissed January 9, 1987.
 
 
 5
 On January 22, 1987, Van Strum filed a lawsuit under FOIA in which she sought declaratory and injunctive relief. Specifically, she requested that the district court declare EPA's procedures for processing FOIA requests violated FOIA, and sought an order compelling EPA to disclose all documents requested in her FOIA Request.
 
 
 6
 In February 1987, Van Strum, in an attempt to moot an EPA motion requesting the district court to make a ruling on the scope of the FOIA Request,[1] filed a second FOIA request ("FOIA Request # 2), specifically requesting documents that she had reason to believe existed and that EPA claimed were outside the scope of her first request.
 
 
 7
 In early August, the parties filed cross-motions for summary judgment. While these motions were pending, Van Strum received a large volume of documents, anonymously sent to her from a source that had access to records of the American Paper Institute. Van Strum claimed that these documents cast serious doubt on the good faith of the affidavits filed by EPA regarding a joint EPA/paper industry study ("Joint Study"). The documents sent to Van Strum indeed supported the existence of an agreement between EPA and the industry to modify, suppress, or delay the results of the Joint Study. See Van Strum v. EPA, 680 F.Supp. 349, 351 (D.Or.1987).
 
 
 8
 Based on the newly discovered evidence, Van Strum sought an order to stay proceedings and allow for discovery. The district court, finding that the Joint Study was indeed within the scope of the FOIA Request, granted the stay to permit discovery. Id. At the time of the stay request, Van Strum filed a third FOIA request ("FOIA Request # 3") for dioxin investigation-related records.
 
 
 9
 After discovery, the parties renewed their motions for summary judgment. In Van Strum's motion, she stated her intention to end the litigation if she received twelve groups of documents identified in her motion. Below is a brief description of the groups of documents identified in Van Strum's motion accompanied by a summary of the parties' arguments advanced in their renewed motions for summary judgment and here on appeal.[2]
 
 Group 1:
 
 10
 Van Strum claims that the FOIA Request requires production of eleven documents listed as references in a purged draft of the NDS that EPA provided to Van Strum after commencement of this litigation. With regard to three of the documents, Van Strum argues that while she has received copies which are "almost" identical to the final drafts, she is entitled to the finalized version of the documents. She claims that she has not received the other eight documents identified.
 
 
 11
 EPA contends that the draft versions of the documents satisfy her FOIA request as the finalized versions were not complete at the time of the FOIA Request or FOIA Request # 2. EPA also contends the other eight documents identified are outside the scope of her FOIA request.
 
 Group 3:
 
 12
 Van Strum contends that the FOIA request requires production of early 1986 sampling results showing small quantities of dioxin in the sludge, effluent, and pulp of paper mills. She claims she has not received these documents. EPA claims that these sampling results were part of the Joint Study and were sent to her along with all of the material regarding that study. Van Strum counters that the sampling results disclosed cannot possibly be the results she requested since the Joint Study was not even initiated until June 1986.
 
 Group 4:
 
 13
 Van Strum claims the FOIA request calls for production of all unpurged drafts of the NDS report. EPA maintains the redacted portions fall within the "deliberative process" exemption to mandatory disclosure under FOIA. See 5 U.S.C. § 552(b)(5). Van Strum argues that because the EPA did not raise the exemption as an affirmative defense in the answer and there has never been an express or implied consent to litigate the issue, EPA's exemption claim should be deemed waived. Van Strum also argues that EPA has waived its exemption to the redacted material since it has disclosed the information to the media and paper industry officals.
 
 Group 5:
 
 14
 Van Strum claims she is entitled to risk assessments for sites listed in Tables 2-1 and 2-2 of the NDS. EPA argues that the risk assessments identified in her complaint were not reasonably described in her FOIA request so as to obligate them to disclose these documents.
 
 Group 6:
 
 15
 Van Strum contends claims that her FOIA request covers production of the peer review documents for three risk assessments referred to in her complaint. EPA contends that these documents are outside of the scope of the FOIA Request.
 
 Group 8:
 
 16
 Van Strum claims EPA is required to disclose the final draft of the Joint Study. EPA claims it is not responsible for disclosing the Joint Study because it was not in existence at the time EPA received either the FOIA Request or FOIA Request # 2.
 
 Group 9:
 
 17
 Van Strum claims that she is entitled to documents concerning dioxin studies in the Midland, Michigan area which have been identified by EPA officials as responsive to her request.
 
 
 18
 EPA claims that Van Strum, through her husband (and counsel) Paul Merrell, waived her claim to many of these documents, as he allegedly told an EPA official at a deposition that Van Strum only desired particular documents on the Midland Study. Van Strum counters that Merrell's conversation cannot possibly be considered a modification of her FOIA Request since the cover letter attached to the documents sent to Merrell in response to his request specifically stated, "I am providing the information and documents listed below in response to your oral request on May 4, 1988 and not in response to any prior Freedom of Information Act requests you or Ms. Van Strum may have made."
 
 Group 10:
 
 19
 Van Strum contends that the FOIA Request encompasses documents related to a bioaccumulation study that was undertaken by EPA; she claims she has not received such documents. EPA argues that she was sent all available records on the bioaccumulation studies. Van Strum counters that she only received draft study protocols, not results, and that she has evidence which suggests such results existed at the time of the FOIA Request.
 
 Group 11:
 
 20
 Van Strum claims that there are pages missing from the September 22, 1986 EPA-paper industry meeting records received from EPA pursuant her FOIA request. EPA simply argues that there are no pages missing from the meeting records produced.
 
 Group 12:
 
 21
 Van Strum concedes she has received the requested raw data from the NDS Study in hard copy; she contends, however, that the EPA has an obligation to transfer the raw data supporting the NDS to floppy disk so it is in a more usable form for her purposes. Specifically, Van Strum argues that the hard copy of the raw data requires months of organizational work to convert the data into a meaningful form, while a computer program can quickly convert the raw data on a floppy disk into data useful for analysis. She argues that given that the data would be much more useful to her on floppy disk and that EPA has the capability of easily producing the information in computer disk form, EPA has an obligation under FOIA to transfer the requested information to disks. EPA contends that it has no need to transfer the information onto floppy disks and that it has no obligation under FOIA to disclose information in the form most convenient to the requester.
 
 
 22
 In September 1988, the district court granted EPA's motion for summary judgment and denied Van Strum's motion. The district court, while acknowledging the existence of pending issues regarding the good-faith of EPA's affidavits, the adequacy of EPA's search pursuant to the FOIA request, and the possible waiver of EPA's exemption claim for a group of the identified documents, nevertheless declared all of these issues moot as it found that the government had produced "all of the documents [Van Strum] identified in her renewed motion for summary judgment." Accordingly, the court entered judgment in favor of EPA.
 
 
 23
 Van Strum now appeals, contending the district court erred in concluding that she has received all documents identified in her summary judgment motion. Specifically, she contends that since EPA tacitly concedes that it has not disclosed several of the identified groups of documents by asserting various justifications for withholding such documents, the district court had no factual basis upon which to conclude that those documents identified in her motion have been received. With respect to those groups of documents in which the dispute involves simply whether the documents have in fact been produced, Van Strum contends that since the district court had nothing more than EPA counsel's bald assertions that the identified documents have been produced, its conclusion that these documents have been disclosed is clearly improper. She also argues that a triable issue of fact exists as to whether the production of the raw data in hard copy form rather than floppy disk satisfies EPA's obligation under FOIA. Van Strum further argues that EPA's affidavits are invalid and should be stricken from the record.
 
 II.
 
 24
 Before examining the particular FOIA request at issue in this litigation, we shall briefly review the bedrock principles of FOIA. Congress adopted FOIA, 5 U.S.C. §§ 522, et seq., to encourage open disclosure of public information. NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978). Section 552(a)(3) requires every agency "upon any request for records which reasonably ... describes such records" to make such records "promptly available to any person." Congress exempted nine categories of documents from the FOIA's broad disclosure requirements. These exemptions are to be narrowly construed. Church of Scientology v. United States Dep't of the Army, 611 F.2d 738, 742 (9th Cir.1979). If an agency invokes a statutory exemption or otherwise withholds FOIA requested documents, FOIA "expressly places the burden 'on the agency to sustain its action' and directs the district courts 'to determine the matter de novo.' " United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 109 S.Ct. 1468, 1472 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).
 
 III.
 
 25
 In reaching its conclusion that all groups of documents identified in Van Strum's motion for summary judgment have been produced, the district court neither articulated dispositive facts nor controlling principles of law. Its terse opinion simply provided no explanation as to what it relied upon or considered in concluding that Van Strum has indeed received all the requested documents.
 
 
 26
 Nor does the record or the procedural posture of this case prove helpful in determining upon what basis the district court had reached its decision. Given that EPA did not dispute that it had not produced document groups 1, 4, 5, 6, 8, and 9, but rather asserted various justifications for nondisclosure of these documents, it is wholly unclear upon what basis the district court concluded that these records have been disclosed. Moreover, since the record contains almost no evidence to support EPA's contention that document groups 3, 10 and 11 have in fact been disclosed, we are also unable to discern the district court's factual basis for its conclusion regarding these documents.[3]
 
 
 27
 We have held that reversal and remand is necessary in a FOIA case where the district court fails to enter findings of facts or conclusions of law and the reasons for its decision are not apparent from the record. In Van Bourg, Allen, Weinberg & Roger v. NLRB, 656 F.2d 1356 (9th Cir.1981), the NLRB resisted disclosure of documents on the basis of four alternative exemptions. Upon cross-motions for summary judgment, the district court, without any explanation for its action, ordered three documents disclosed and the remaining material withheld. The court held that because it could not discern the legal principles or identify the undisputed facts warranting the ordered disclosure of the particular documents, it was necessary to remand to the district court with instructions to "state in reasonable detail the reasons for its decision as to each document in dispute." Id. at 1358.
 
 
 28
 In deciding to remand, the court relied both on general principles of appellate review of summary judgment and on the unique nature of FOIA cases. As to the former point, the court noted that when summary judgment has been granted, "a statement of the dispositive facts and controlling principles of law is permissible and indeed preferable to assist review on appeal." Id. The court further declared that when the district court's "underlying holdings would otherwise be ambiguous or inascertainable, the reasons for entering summary judgment must be stated somewhere in the record." Id.
 
 
 29
 In recognition of FOIA's mandate that the district court subject a federal agency's disclosure decisions to de novo review, see 5 U.S.C. § 552(a)(4)(B), the court in Van Bourg also explicitly asserted that " '[d]istrict [c]ourt decisions in FOIA cases must provide statements of law that are both accurate and sufficiently detailed to establish that the careful de novo review prescribed by Congress has in fact taken place.' " Id. at 1358 (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Bell, 603 F.2d 945, 950 (D.C.Cir.1979)). Relying upon the principles invoked in Van Bourg, other courts have also reversed and remanded district court decisions granting federal agencies' motions for summary judgment in FOIA cases in order to obtain a fuller explanation of the bases for their decisions. See Ackerly v. Ley, 420 F.2d 1336, 1342 (D.C.Cir.1969) (remand in FOIA case necessary to obtain "a more detailed identification of the nature of the documents in question, and a greater exposure of the reasons why the particular documents were regarded as exempted"); Cuneo v. Schlesinger, 484 F.2d 1086, 1091 (D.C.Cir.1973), (remand required since "we have no record before us containing the answer to [whether the document contains secret material]"), cert. denied, Rosen v. Vaughn, 415 U.S. 977 (1974).
 
 
 30
 Van Bourg clearly requires reversal of the district court order in this case. In light of EPA's tacit admission that it is withholding document groups 1, 4, 5, 6, 8 and 9 and the complete absence of evidence indicating disclosure of document groups 3, 10 and 11, the district court's failure to provide any explanation of its conclusion that all requested documents have indeed been produced renders its underlying holdings "ambiguous and inascertainable," see Van Bourg, 656 F.2d at 1357, and thus requires a remand for a detailed explanation of the grounds for entering summary judgment. The district court's bare assertion that it found all the requested documents produced simply provides this court with no basis upon which to engage in meaningful appellate review. Moreover, the district court's order still lacks the detailed statements of law that must be included in FOIA summary judgment dispositions to demonstrate that the statutorily mandated de novo review has indeed occurred. Id. at 1357. Accordingly, we reverse the district court's entry of summary judgment with respect to document groups 1-11 (excluding groups 2 and 7) and remand to the district court for a detailed explanation of the factual and legal bases of its determination that all documents have been received.
 
 III.
 
 31
 We believe, however, that the district court did not err in granting summary judgment with respect to Group 12 documents. Van Strum concedes that she received raw data requested in hard copy form; she argues, however, that EPA has an obligation under FOIA to produce the raw data on floppy disk rather hard copy since EPA has the capability to transfer the data to floppy disk and the floppy disk format would save her months of organizational work in preparation for analysis of the data.
 
 
 32
 There is scant authority on an agency's obligation under FOIA to produce documents in a particular format that is more useful to the requester than alternative formats. In Dismukes v. Dep't of the Interior, 603 F.Supp. 760 (D.D.C.1984), apparently the only case that has directly confronted the "choice of format" issue, the district court held that a "defendant has no obligation under FOIA to accommodate plaintiff's [format] preference." Id. at 763. Rather, an agency is obligated only to "provide responsive non-exempt information in a reasonably accessible form." Id. (emphasis added). Accordingly, a plaintiff does not present "an actionable claim under FOIA unless [the] plaintiff contends that [the form employed] affects his access to the information he seeks." Id. at 762.
 
 
 33
 In light of this standard, which we find appropriate for determining the parameters of a federal agency's obligations in this context, Van Strum has failed to establish a genuine issue of material fact concerning whether EPA has breached its statutory duty by producing the raw data on hard copy rather than floppy disk. While Van Strum suggests in her affidavit that her work will be far more arduous with the hard copy of the data, she never alleges that the hard copy does not provide her with complete access to the information requested. Although Van Strum may prefer the floppy disk format because of her computer capabilities, EPA has no obligation to accommodate that preference. Id. Since Van Strum offers no evidence that the hard copy actually hampers her access to the data requested, the district court committed no error in entering summary judgment in favor of EPA on this issue.
 
 IV.
 
 34
 Finally, we find Van Strum's motion to strike EPA's affidavits wholly without merit. Based on the fact that all EPA affidavits contained the phrase "Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief," Van Strum moved to strike all EPA affidavits. She claimed that such an attestation did not comply with 28 U.S.C. § 1746.[4] In response to her motion, EPA resubmitted the affidavits with attestations re-executed by the witnesses. The revised attestation inserted at the end of each affidavit now reads:
 
 
 35
 To assure compliance with the requirements of 28 U.S.C. § 1746, I would like to amend the last numbered paragraph of this affidavit as follows: Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.
 
 
 36
 Although the current attestation language directly mirrors 27 U.S.C. § 1746, Van Strum maintains that the affidavits remain invalid since the clauses "I would like to amend" and "foregoing" are hopelessly vague and fail to satisfy § 1746's substantial compliance requirements.
 
 
 37
 Van Strum's contention clearly lacks merit. The first portion of the revised attestation is fairly read as an explanation for the re-execution of the affidavit rather than as part of the attestation itself. Additionally, the term "foregoing" is entirely clear within the context of the affidavit. Moreover, Van Strum cites no authority which casts doubt on the validity of the affidavits as written. Accordingly, we find no basis to strike the affidavits from the record.
 
 V.
 
 38
 We affirm the district court's entry of summary judgment with respect to the group 12 documents, the raw data from the NDS study. We reverse the district court judgment as to all other document groups still in dispute and remand for a detailed explanation of the factual and legal bases of its determination that these groups or documents have been produced. Finally, we deny Van Strum's motion to strike EPA's affidavits. Each party shall bear its own costs.
 
 
 39
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This EPA motion was eventually denied by the district court
 
 
 [2]
 Van Strum has abandoned her claims on appeal regarding documents identified as groups 2 and 7 in her motion for summary judgment. Accordingly, we need not address these document groups in this appeal
 
 
 [3]
 Indeed, EPA offers nothing more than counsel's unsupported representations to support its claim that document groups 10 and 11 have been produced. While it does submit an affidavit and deposition testimony to bolster its claim that group 11 documents have already been forwarded to Van Strum, the record contains no evidence regarding the crux of the group 11 document dispute--whether the Joint Study sampling results indisputably produced are in fact the early 1986 sampling results identified in Van Strum's motion
 
 
 [4]
 28 U.S.C. § 1746 provides in relevant part:
 Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
 * * *
 (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
 (Signature)"