**Philip DISMUKES, Plaintiff,**

v.

**DEPARTMENT OF the INTERIOR, Defendant.**

No. 84–0757.

United States District Court, District of Columbia.

Dec. 19, 1984.

James H. Lesar, Washington, D.C., for plaintiff.

Patricia J. Kenney, Asst. U.S. Atty., Washington, D.C., for defendant.

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This action arises under the Freedom of Information Act, 5 U.S.C. § 552 (1977). The single issue presented by the pending cross dispositive motions is whether a FOIA requester may specify the format of data he seeks from an agency.

Plaintiff Philip Dismukes brings this action to obtain a copy of a computer tape listing by name and address the participants in the six 1982 Bureau of Land Man-

agement ("BLM") Simultaneous Oil and Gas Leasing ("SOG") bimonthly lotteries. Defendant Department of the Interior ("Interior") has advised plaintiff that the list he requests is routinely made available to the public on microfiche cards and can be provided to him in that form. Interior seeks dismissal of this action (or, alternatively, summary judgment in favor of defendant), contending that it has discharged its obligation under FOIA by offering plaintiff the requested lottery information on microfiche. In his cross-motion for summary judgment, plaintiff maintains that his specific FOIA request for lottery information "in 9 track, 1600 bpi, DOS or unlabeled, IBM Compatible formats, with file dumps and file layouts"[1] has not been satisfied.

This Court's jurisdiction under FOIA turns on whether an agency has (1) "improperly" (2) "withheld" (3) "agency records". *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 968, 63 L.Ed.2d 267 (1980); *Forsham v. Harris*, 445 U.S. 169, 177, 100 S.Ct. 977, 983, 63 L.Ed.2d 293 (1980). Commonly, an agency resisting a FOIA request will assert that one of the statute's nine enumerated exemptions covers the subject material, or will challenge the "agency record" status of the document. This case is not typical. Here, there is no dispute that *both* the requested computer tape and the corresponding microfiche are nonexempt agency records. The issue is whether the tape and microfiche are equivalent agency records such that release of the latter will satisfy a request for the former. In other words, the Court must decide whether a FOIA plaintiff may designate the format as well as the content of a requested agency record.

Analysis of that issue begins with an understanding of an agency's basic obligation under FOIA. The fundamental objective of FOIA is to "loosen the agency's grip on the data underlying governmental decisionmaking"—to foster "disclosure, not se-

crecy." *Chrysler Corp. v. Brown*, 441 U.S. 281, 290 n. 10, 99 S.Ct. 1705, 1712 n. 10, 60 L.Ed.2d 208 (1979), *quoting Dep't of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976); *see also Allen v. Dep't of Defense*, 580 F.Supp. 74 (D.D.C.1983). The Act represents a Congressional effort to open the doors of government to the people, in the hope that public access to government affairs will ensure an "informed electorate ... vital to the proper operations of a democracy." S.Rep. No. 813, 89th Cong., 1st Sess. 2–3 (1965); H.R.Rep. No. 1497, 89th Cong.,2d Sess. 5–6 (1966), U.S.Code Cong. & Admin. News 1966, 2418, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). Given that purpose, it is not surprising that courts construing FOIA have focused on the informational content of records at issue in determining claims of exemption, *see e.g., Department of State v. Washington Post Co.*, 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982); *Breuhaus v. IRS*, 609 F.2d 80 (2d Cir.1979); *Zale Corp. v. IRS*, 481 F.Supp. 486 (D.D.C. 1979); or even questions of agency record status, *see Center for National Security Studies v. CIA*, 577 F.Supp. 584, 589–90 (D.D.C.1984).

The clearest exposition of the Court's concern for *information* in FOIA cases is found in *FBI v. Abramson*, 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982). The issue in that case was whether information initially contained in a record made for law enforcement purposes (and therefore subject to FOIA's Exemption 7, 5 U.S.C. § 552(b)(7)) remained exempt from disclosure when reproduced or summarized in a document prepared for a non-law-enforcement purpose. In holding that it did, the Court focused on the *information*, not the form in which it was presented, even though Exemption 7 by its terms covers only certain "investigatory records compiled for law enforcement purposes." Instead of looking only to the record, the Court observed that FOIA "require[s] as-

---

1. This is the language of plaintiff's initial request to BLM by letter dated November 26, 1982. Attachment 1 to Plaintiff's Cross-Motion for Summary Judgment.

sessment of the harm produced by disclosure of certain types of *information.* Once it has established that *information* was compiled pursuant to a legitimate law enforcement investigation and that disclosure of such *information* would lead to one of the listed harms, the *information* is exempt." 456 U.S. at 631–32, 102 S.Ct. at 2064 (emphasis added).

In *Center for National Security Studies v. CIA, supra,* this Court considered the agency record status of the duplicate of a report prepared by the CIA for a House of Representatives committee. Although the original was a Congressional document beyond the reach of FOIA, the duplicate remained in the CIA files and was, in the plaintiff's view, an agency record subject to FOIA. The Court rejected plaintiff's "literal, 'physical' approach to the definition of 'agency record'", echoing the *Abramson* court's reluctance to place the focus of FOIA on the "physical format of documents" rather than on their contents. 577 F.Supp. at 589–90. The message of both *Abramson* and *CNSS* is that resolution of disputes under FOIA turns on "the nature of the information and the effects of disclosure." 456 U.S. at 626, 102 S.Ct. at 2061; 577 F.Supp. at 590.

Plaintiff attempts to turn the focus from content to format by citing language from a prior Supreme Court holding to the effect that "[FOIA] deals with 'agency records', not information in the abstract." *Forsham v. Harris,* 445 U.S. 169, 185, 100 S.Ct. 977, 987, 63 L.Ed.2d 293 (1980). Placed in context, that statement is not at odds with the above discussion. The *Forsham* court held, *inter alia,* that FOIA's disclosure requirements extend only to existing compilations of information: in response to a FOIA request, an agency need not create new documents containing data previously unrecorded. It does not follow from that holding that twice-recorded information, such as that at issue here, must be made available in the format selected by the requester.

Viewed against this background of legislative history and case law, plaintiff's challenge to the format of the lottery information offered by defendant does not state an actionable claim under FOIA unless plaintiff contends that defendant's decision to release the microfiche rather than the tape somehow affects his access to the information he seeks—the names and addresses of the 1982 SOG lottery participants. In theory, a variation in the format of data released by defendant could reduce the quantum of information made available to plaintiff. For example, had plaintiff requested an audio tape, he could well argue that production of a written transcript would not satisfy his request, as transcription removes nuances of inflection which give words added meaning beyond that reproducible on paper. However, neither plaintiff nor any document in the record suggests that the quantum of information contained in the microfiche varies in any way from that recorded on the computer tape. Indeed, the uncontroverted affidavit of a knowledgeable BLM official states that "a printout from the ... tape would be identical to the corresponding page from the microfiche." Affidavit of Andrew Tarshis ("Tarshis Aff.") at ¶ 7.

Content aside, the Court must also consider whether, as a practical matter, defendant's decision to release only the microfiche will unreasonably hamper plaintiff's access to the lottery information. Plaintiff contends that from his standpoint computer tape would provide a less expensive and more convenient alternative to microfiche, and he asserts that the agency's denial of that alternative is a deliberate tactic to hinder him from obtaining the subject information.

In response to plaintiff's challenge to the agency's bona fides, defendant states that its decision to establish a distribution system for release of microfiche instead of computer tape was based on legitimate concerns. Compared to computer tape, claims defendant, microfiche is the format more likely to be readily readable by the largest number of requesters, as microfiche readers are available for general use in many public buildings. Affidavit of Jeffrey Zabler ("Zabler Aff.") at ¶ 18. Plaintiff ar-

gues that the microfiche format is in fact very costly for those requesters who need to obtain a paper copy of the information for further study. Affidavit of Philip Dismukes ("Dismukes Aff.") at ¶ 7. Even if that is so, the microfiche reader nonetheless enables a requester, at minimal cost, to at least view an image of the microfiche projected on a screen. By contrast, information stored on a computer tape is *completely* inaccessible unless the requester is able to locate and use a costly computer compatible with the tape generated by defendant. The fact that more people are purchasing SOG lottery information since the microfiche system was instituted is testament to the fact that the hard copy cost factor cited by plaintiff is not a practical deterrent to the purchase of the SOG lottery microfiche.[2]

Furthermore, defendant's decision to release SOG lottery information in the form most useful to the general public does not erect unreasonable barriers to plaintiff's access to the information. The cost differential between the tape and microfiche amounts to only $15 per drawing, or $90 for a set of six bimonthly drawing participant lists. Tarshis Aff. at ¶ 10. According to defendant, even that difference is exaggerated by the agency's current pricing practices. Because the creation of one tape is an intermediate step in the microfiche production process, defendant incorporates the cost of original tape production into the microfiche price. However, defendant does not include that cost into the price for copies of the tape. Under a distribution system utilizing only computer tapes, the tape would bear the full costs of production, and the cost of tape copies would rise appreciably. Tarshis Aff. at ¶ 10. Plaintiff's observation that if tapes were the primary format distributed by BLM "they would in fact cost no more than the microfiche and perhaps somewhat less", Dismukes Aff. at ¶ 4, does not refute defendant's point that under the *present* distribution system the tape price is artificially low.

It may well be that for this particular requester, and under the current pricing system, computer tape offers the least expensive, most convenient means of access to the SOG lottery information compiled by defendant. Nonetheless, defendant has no obligation under FOIA to accommodate plaintiff's preference. The agency need only provide responsive, nonexempt information in a reasonably accessible form, and its offer to plaintiff satisfies that obligation.

Accordingly, it is by the Court this 18th day of December, 1984

ORDERED that defendant's motion for summary judgment is hereby granted, and it is further

ORDERED that plaintiff's motion for summary judgment is hereby denied.

This cause stands dismissed.

---

**2.** Defendant further states that its decision to release microfiche instead of computer tape resulted in part from the agency's concern that a computerized format would lend itself to abuse by private sector filing agencies eager to use the computer tape as a mailing list in violation of the policy of the Privacy Act, 5 U.S.C. § 552a.

Zabler Aff. at ¶ 18. The prospects of similar abuse by filing agencies developing mailing lists from microfiche are unclear and need not be discussed here. It will suffice that defendant has rebutted plaintiff's claim of bad faith by raising at least one legitimate reason for choosing to release microfiche rather than tape.