(No. 68677.—

AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES (AFSCME), AFL-CIO, Appellant, v. COUNTY OF COOK et al., Appellees.

*Opinion filed May 23, 1990.*

336

STAMOS, J., joined by CALVO, J., concurring in part and dissenting in part.

Melissa J. Auerbach, of Cornfield & Feldman, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Joan S. Cherry, Deputy State's Attorney, and Susan Condon, Assistant State's Attorney, of counsel), for appellees.

JUSTICE RYAN delivered the opinion of the court:

This is an appeal from a decision of the first district of the appellate court that reversed the ruling of the circuit court of Cook County. The circuit court determined that defendants, Cook County and George Dunne, as president of the county board, must furnish plaintiff, the American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME), with certain information requested pursuant to the Illinois Freedom of Information Act (Ill. Rev. Stat. 1985, ch. 116, par. 201 et seq.) (Act), in the form of a computer tape, which plaintiff wanted, rather than a printout, which defendants furnished.

The appellate court reversed this ruling, holding that the furnisher of information need only provide the requested information in a reasonably accessible format, and that the computer printout sufficed. (182 Ill. App. 3d 941.) We granted plaintiff's petition for leave to appeal (107 Ill. 2d R. 315). While we agree with the appellate court's conclusion that the circuit court did not properly decide this case, we cannot concur with the appellate court's reasoning.

On several occasions during October and November 1986, representatives of AFSCME made requests for in-

formation pursuant to the Act to Thomas P. Beck, Cook County comptroller. The requests were made using pre-printed forms on which the requester typed the following sentence above the line requiring a specific identification of the information being requested: "See attached list: Names of employees by department with job title, rate of pay, and work locations." Attached to the requests was a list of several departments that are under the control of the Cook County board. The requesters checked the portion of the form asking the furnisher to copy the information and signed the portion of the form authorizing a $0.10 copying charge per page and a $1 document certification fee. Defendants furnished the requested information shortly thereafter in the form of a computer printout.

On November 26, 1986, Robert Lawson, a representative of AFSCME, sent a letter to Mr. Beck asking for essentially the same information, with the apparent addition of the offices of State's Attorney, county clerk, chief administrator, and highway safety, and several federally funded programs, on computer tape or diskette, offering to pay any reasonable costs incurred in providing the information. Mr. Beck denied the request in a letter dated December 1, 1986, stating as follows:

> "In reply to your request of November 26, 1986, for information on computer tape or diskette, your request is denied.
>
> The majority of the information you requested was already supplied to your union by my office within the last two weeks and I know your union is also requesting the same information from various elected officials."

Melissa Auerbach, counsel for Mr. Lawson, repeated the request in a letter dated December 17, 1986. Ms. Auerbach urged Mr. Beck to supply the information because, she stated, "[i]nformation maintained by your agency on computer tape or diskette is *** clearly sub-

ject to release under [the Act], and must be made available for inspection and copying pursuant to a proper request." In response to this inquiry, Mr. Beck sent a letter to Ms. Auerbach, dated December 31, 1986, again denying the request. Mr. Beck stated that the information had already been provided, that the information was not stored in the format requested and that the State's Attorney's office advised him that he was not required to furnish the information on computer tape or diskette. Ms. Auerbach then sent a letter, dated January 5, 1987, to William M. Doyle, chief administrative officer, appealing Mr. Beck's denial. (Ill. Rev. Stat. 1985, ch. 116, par. 210.) Mr. Doyle responded, in a letter dated February 11, 1987, as follows:

"Having reviewed this matter with our attorneys, we take the position that we have already complied with the Freedom of Information Act by providing your client, AFSCME, the information requested in hard copy.

It is our continued position that the Act does not require us to now provide that same information on computer tape."

Plaintiff filed its complaint for injunctive relief on March 5, 1987, alleging essentially that defendants failed to respond to plaintiff's November 26, 1986, request; and that defendants had a duty to do so because information stored on computer tape is subject to inspection and copying pursuant to the Act. (Ill. Rev. Stat. 1985, ch. 116, par. 203(a).) Defendants answered the complaint by admitting most of plaintiff's allegations, but further stating that defendants had supplied all of the information in printed format before plaintiff filed suit and that, as a matter of law, the Act does not require that the provider of information furnish the same information in the form of a computer tape or diskette.

Plaintiff filed a motion for summary judgment, stating that the issue to be decided was "whether, when cer-

tain information is maintained by a public body on computer tape, a person is entitled, under the Freedom of Information Act, to obtain a copy of that tape." Plaintiff's motion was accompanied by an affidavit by Roy M. Heffner, a data processing systems consultant, who stated that the cost of entering the data on computer would be $900, most of which could be avoided if the computer tape was provided.

Defendants responded by stating that "the Freedom of Information Act [citation] creates no right to receive information on computer tape where the requested information has been previously provided in a reasonably accessible format." Defendants' response was accompanied by an affidavit from Mr. Beck stating that his office's practice was to respond to requests such as plaintiff's by providing a printout so to "ensure the accuracy and consistency of the material; and because a visually readable print-out is the most generally accessible format." Defendants also filed a motion for judgment on the pleadings to the same effect.

After conducting hearings and analyzing the memoranda accompanying the parties' motions, the circuit court granted plaintiff's motion for summary judgment and denied defendants' motion for judgment on the pleadings. The court, in applying a balancing test, found that there was no greater burden on defendants in providing the information on computer tape, but the inconvenience to plaintiff in having to physically transfer the data to its computer rather than merely copying the tape was great.

The appellate court reversed both rulings. It held, adopting the standard set forth in *Dismukes v. Department of the Interior* (D.C. Cir. 1984), 603 F. Supp. 760, that the agency that is asked to provide the information "need only provide responsive, nonexempt information in a reasonably accessible form," and that defendants

complied by providing the information in the form of a printout. (182 Ill. App. 3d at 946.) We hold that the appellate court erred by applying the standard set forth in *Dismukes* to the Illinois Act. However, we are also not satisfied that the circuit court heard sufficient evidence or made sufficient findings of facts to dispose of this matter.

The initial inquiry is whether the computer tape that plaintiff requested is generally within the scope of the Act. The Illinois Act is a clearly stated statute. It provides generally that "persons are entitled to full and complete information regarding the affairs of government." (Ill. Rev. Stat. 1985, ch. 116, par. 201.) The Act is not designed, though, to provide access to information to the extent that it disrupts the efficient functioning of a government agency. The Act, therefore, creates a simple mechanism whereby a public body must comply with a proper request for information unless it can avoid providing the information by invoking one of the narrow exceptions provided in the Act.

The Act states that, upon receiving a request, "[e]ach public body [must] make available to any person for inspection or copying all public records." (Ill. Rev. Stat. 1985, ch. 116, par. 203.) "Public records" means, among other things, "tapes, recordings, electronic data processing records, recorded information and all other documentary materials, regardless of physical form or characteristics." (Ill. Rev. Stat. 1985, ch. 116, par. 202(c).) This definition, therefore, includes computer tapes within its scope. See also *Long v. United States Internal Revenue Service* (9th Cir. 1979), 596 F.2d 362, 365 (Federal Freedom of Information Act applies to computer tapes).

As such, upon receiving a proper request for a copy of a computer tape, defendants were obligated either to comply or state clearly upon what exception it was relying to avoid compliance. Section 7 of the Act (Ill. Rev.

Stat. 1985, ch. 116, par. 207) enumerates several exceptions under which a public body may avoid information disclosure. None of these appear relevant to this case. Section 3 of the Act, however, which creates the duty to make public records available for inspection and copying, contains its own internal exception. Subsection (f) states that a public body may avoid compliance if it would prove to be "unduly burdensome," and the burden cannot be avoided. (Ill. Rev. Stat. 1985, ch. 116, par. 203(f).) This subsection also states that repeated requests for the same public record are presumed to be unduly burdensome. As stated earlier, the term "public records" means, among other things, "recorded information." Therefore, if one generally requests recorded information, as may have been the case here, that person may not request the same recorded information soon thereafter, even if the requester asks for the recorded information in a different physical format.

Having reviewed the statute and the record in this case, we can attempt to apply the facts, to the extent that they were presented in the lower court, to the law. As indicated earlier in this opinion, defendants complied with plaintiff's original request for information. Defendants rejected plaintiff's subsequent request that specified the form in which plaintiff was requesting the information, however. Defendants have provided several reasons for their denial of plaintiff's request. Some that are found in the correspondence and some that defendants raised after plaintiff filed suit might have merit, some clearly do not.

First, defendant contended that the information requested in the November 26, 1986, letter had been provided in the form requested two weeks prior to that request. While the record indicates that this is substantially true, the trial court did not address this factual issue, or whether the November 26, 1986, letter

constituted a "repeated request" for the purpose of the Act.

Defendant also contended that the information requested was not stored in the format requested. While this might also provide a valid reason for denying plaintiff's request, because the provider of information is not required to prepare its records in a new format merely to accommodate a request for certain information, it was also not presented to the circuit court, nor did the circuit court address it.

Another one of defendants' responses to plaintiff's request for information stated that they were not required to furnish information on computer tape. This is not correct. If plaintiff has properly made a request for a copy of the computer tape, which as we stated earlier is a public record, and defendants cannot properly invoke an exception to their duty to make the computer tape available for copying, the plaintiff's request should be honored. To avoid the defense of "repeated requests" the plaintiff should have in the first request asked for a copy of the computer tape.

Similarly, defendant now argues, and a majority of the appellate court specifically found, that a public body may choose the format in which it releases information so long as the requester is provided reasonable access to the information, regardless of the format that was requested. This is likewise incorrect. The Act states that public bodies must make public records available for inspection and copying, unless they can avoid doing so by invoking an exception that is provided in the Act. Computer tapes are public records and must, therefore, be made available to the public. The Act does not state that a public body may reply to information requests by supplying different public records than those for which the requester asked. Rather, the public body must make the public record available, including computer tapes, unless

it can properly invoke an exception. It is the public body's burden, moreover, to establish that an exception applies.

Both parties, and the appellate court, cite several cases in support of their positions. While we think that the Illinois Act speaks for itself, and none of the cases that the parties cite construe the Illinois Act, we will nevertheless examine the significance of the various authorities cited.

Plaintiff first calls this court's attention to *Menge v. City of Manchester* (1973), 113 N.H. 533, 311 A.2d 116. This case was brought by a college professor pursuant to New Hampshire's "right to know law" to force the defendant to make a computer tape available. The *Menge* court first found that computer tapes are public records for the purpose of the New Hampshire law. It further stated that, "[t]aking into account the practical realities of the situation, we believe it not only possible, but in accord with our law and what seems to be its basic philosophy, to so construe the statute as to permit plaintiff to have the reproduced tapes at his expense." (*Menge*, 113 N.H. at 538, 311 A.2d at 119.) While this and other cases plaintiff cites support its general position, which we addressed earlier in this opinion, that computer tapes are public records, they do not shed light on the factual questions to be decided in the present case. See also *Whorton v. Gaspard* (1965), 239 Ark. 715, 393 S.W.2d 773 (voting lists available for copying); *Direct Mail Service, Inc. v. Registrar of Motor Vehicles* (1937), 296 Mass. 353, 5 N.E.2d 545 (right to inspect and copy automobile registrations); *Ortiz v. Jaramillo* (1971), 82 N.M. 445, 483 P.2d 500 (affidavits of registration on magnetic tape subject to copying); *Lorain County Title Co. v. Essex* (1976), 53 Ohio App. 2d 274, 373 N.E.2d 1261 (microfilm is a public record).

The case upon which defendants and the appellate court primarily rely, *Dismukes v. Department of Interior* (D.D.C. 1984), 603 F. Supp. 760, is more on point, but we decline to interpret the Illinois Act as narrowly as the *Dismukes* court interpreted the Federal Freedom of Information Act and as the appellate court in this case interpreted the Illinois Act. In *Dismukes*, the plaintiff specifically requested certain information in the form of a computer tape. Defendant responded by denying the request for a copy of the computer tape, but offered the same information in the form of microfiche cards. Plaintiff brought suit seeking to enforce its original request. The court granted defendant's motion for summary judgment. The court found that the requester of information may not dictate the format in which the information will be provided, and that the furnishing public body "need only provide responsive, nonexempt information in a reasonably accessible form." (603 F. Supp. at 763.) The reasons that the *Dismukes* court gave for adopting this rule, while perhaps consistent with the Federal Freedom of Information Act, are clearly not applicable to the Illinois Act.

The *Dismukes* court first reasoned that the agency furnishing the information can provide it in a form that varies from that which was requested if the different form does not alter the content of the information. The court came to this conclusion because it found that what was important was the information content of the record and not the record itself for the purpose of the Federal Freedom of Information Act. The Federal statute appears to require only that "public information" be made available. (5 U.S.C. §552 (Supp. I 1976).) The Illinois Act, however, requires that "public records," which include computer tapes, be made available. That is, the Illinois Act is not solely concerned with content, it also re-

quires that information be made available in the form in which it is normally kept.

Because the focus of the Federal statute is on the content of the information, the *Dismukes* court essentially shifted the burden to the plaintiffs to demonstrate that the form in which the information was provided in some way changed its content: "[N]either plaintiff nor any document in the record suggests that the quantum of information contained in the microfiche varies in any way from that recorded on the computer tape." (603 F. Supp. at 762.) The Illinois Act, however, does not contemplate such burden-shifting. Under the Illinois Act, having received a proper request to inspect or copy a public record, the public body must either comply or state why it cannot comply. It is not sufficient in Illinois for a public body to furnish a public record that does not conform and then force the requester to explain why the record furnished is inadequate.

The *Dismukes* court also concluded that the furnisher of information may choose the form in which it provides it so long as the form chosen does not, as a practical matter, deny access to the information. That is, for the purpose of the Federal statute, according to the *Dismukes* court, only if the public body provides the information in an extremely inconvenient form has it failed to comply with the request. Again, in Illinois the focus is different. Under the Illinois Act, once a proper request has been made, the public body must either comply, or explain why it cannot. One legitimate reason for choosing not to comply is that the burden on the public body in producing a specific public record is too great, in which case the two parties can agree to, or a court can impose, a more manageable solution, such as providing an alternate public record that contains substantially the same information. A public body may not in Illinois, however, as it did in *Dismukes*, provide a public record

that does not conform to the request and then force the requester to explain why it will not suffice.

The *Dismukes* court also accepted the defendant's contention that it was providing the information in the form of microfiche because "microfiche is the format more likely to be readable by the largest number of requesters." (603 F. Supp. at 762.) So too, in the present case, defendants argue that a computer printout is the most accessible form. The *Dismukes* court does not address the question, however, of why information cannot be provided in a different form to different requesters. In Illinois, the Act requires an individualized determination for each request. While it might be excusable for a public body not to provide information in a specified form if its historic policy has been to provide the same information in a different form and to deviate would create a burden, it is not excusable for a public body to set its policy after receiving a request with which it chooses not to comply, as appears to be the case here. Again, though, this is a factual question that has not yet been addressed below.

Because of the many distinctions raised above between *Dismukes* and the Illinois law, we find that the appellate court erred in adopting the standard set forth in *Dismukes* for the Illinois Act. We cannot, however, merely reinstate the circuit court's ruling. While we hold here that computer tapes are public records and, therefore, subject to inspection and copying, the circuit court must still determine if defendants properly invoked any exception to their general duty to make public records available for inspection and copying. One obvious possible exception is that the November 26, 1986, request constituted a repeated request and was, therefore, unduly burdensome. There may be other valid reasons why defendants should not furnish the information on computer tape. For instance, at oral argument it was sug-

gested that the means of verifying the accuracy of the information contained on the computer tape was more difficult than on the printout. These and other matters may be considered by the circuit court in determining whether or not the request for a computer tape should be honored.

As such, we affirm the appellate court's judgment reversing the circuit court's granting of plaintiff's motion for summary judgment. We do so for different reasons, however. While we think that the circuit court has yet to decide whether defendants properly invoked a statutory exception to their duty to make public records available for inspection and copying, we reject the conclusion of the appellate court that the circuit court erred in granting plaintiff's motion for summary judgment because, as a matter of law, a public body has complied with the Act by providing reasonable access to nonexempt information. We also disagree with the appellate court as to its reversal of the circuit court's denial of defendants' motion for judgment on the pleadings. We remand the cause to the circuit court and direct it to conduct further proceedings consistent with this opinion.

*Appellate court affirmed;*
*cause remanded with directions.*

JUSTICE STAMOS, concurring in part and dissenting in part:

I concur with the majority's determination that the computer tape which plaintiff requested is within the scope of the Illinois Freedom of Information Act (Act). (Ill. Rev. Stat. 1987, ch. 116, par. 201 *et seq.*; see Note, *AFSCME v. County of Cook: Access to Information Beyond Reach as Computer Tape Lengthens Bureaucratic Red Tape*, 3 Software L.J. 775, 785-87 (1989) (Illinois Act defines computer tape as public record and, because it was designed to protect requesters of information who

lack computer skills, should not penalize those who are computer-literate).) I also agree that defendants would be required to comply with the Act and provide plaintiff with a copy of the tape if such compliance would not be "unduly burdensome." (Ill. Rev. Stat. 1987, ch. 116, par. 203(f).) The majority is also correct in distinguishing the Federal case law in this area, particularly the *Dismukes* case (see Note, *AFSCME v. County of Cook: Access to Information Beyond Reach as Computer Tape Lengthens Bureaucratic Red Tape*, 3 Software L.J. 775, 787-91 (1989) (determining that appellate court in case at bar misconstrued *Dismukes*)). However, I must dissent with respect to the majority's reasons for partially affirming the appellate court's judgment.

The proper construction of a statute and its application to undisputed facts are questions of law subject to independent determination by a court of review. (*People v. Blair* (1972), 52 Ill. 2d 371, 373). The facts in the case at bar are undisputed. Plaintiff first made a general request to defendants for certain public records, using pre-printed forms which did not clearly state in what format the requester expected the information to be provided. Defendants complied with this request by sending a typed computer printout of desired information. After receipt of the printout of the information, plaintiff made a second request for the same information, this time in a computer tape format. Because these facts are undisputed and because the language of section 3(f) of the Act (Ill. Rev. Stat. 1987, ch. 116, par. 203(f)) is plain and unambiguous, we can determine as a matter of law whether this second request qualifies as a "repeated request" for the same "public record" which would require us to find it "unduly burdensome" under the Act.

Section 3(f) specifically states:

"Requests calling for all records falling within a category shall be complied with unless compliance with the

request would be unduly burdensome for the complying public body and there is no way to narrow the request and the burden on the public body outweighs the public interest in the information. Before invoking this exemption, the public body shall extend to the person making the request an opportunity to confer with it in an attempt to reduce the request to manageable proportions. If any body responds to a categorical request by stating that compliance would unduly burden its operation and the conditions described above are met, it shall do so in writing, specifying the reasons why it would be unduly burdensome and the extent to which compliance will so burden the operations of the public body. Such a response shall be treated as a denial of the request for information. *Repeated requests for the same public records by the same person shall be deemed unduly burdensome under this provision.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 116, par. 203(f).

The majority misfocused its analysis by concentrating on the term "recorded information" when it recited the definition of what a "public record" is. (See 136 Ill. 2d at 341-42.) Section 3(f) emphasizes repeated requests for the *same* public record. After analyzing the Act under the accepted principles of statutory construction in light of the undisputed facts, I conclude that the Act clearly indicates that a computer tape and a typed printout which contain essentially the same information are *not* the same "public record" for purposes of the statute.

"Public records" are defined in section 2(c) of the Act as "all records, reports, forms, writings, letters, memoranda, books, papers, maps, photographs, microfilms, cards, tapes, recordings, electronic data processing records, recorded information and all other documentary materials, *regardless of physical form or characteristics.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 116, par. 202(c).) The emphasis in section 2(c) is on the different formats or media a public body may use to preserve

information and which qualify as "public records." The kind of information which may be included in a public record, regardless of the format in which it is preserved, is addressed in the next portion of section 2(c).

The key to determining the difference between the Act's definitions of "public records" and "information" is seen in the verbs which follow the term "public records" in section 2(c). The list of the various formats is tied to what the term "public records" "means." These formats are then identified as "[including], but *** expressly not limited to" the different types of information. Thus, a "public record" is defined by its format, and can contain a myriad of different kinds of information. We can logically conclude from the plain language of section 2(c) that the General Assembly intended the availability of all the different formats and media to be the predominant concern under the Act. See *Maloney v. Bower* (1986), 113 Ill. 2d 473, 479 (courts, when interpreting a statute, must give the language of that statute its plain and ordinary meaning); *County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 151 (courts should first look to the statutory language as the best indication of the intent of the drafters).

The majority appears to recognize the precedence of format over information when it distinguishes *Dismukes* from the case at bar. According to the majority, the Federal standard allows the public body to provide the information in any format, as long as all the pertinent information is included and the form is not extremely inconvenient. The majority correctly states that under the Illinois Act, the public body must release the information in the format requested, unless it can explain why such a format would be overly burdensome. (136 Ill. 2d at 345-48.) I find it inconsistent for the majority to note the difference between "records" and "informa-

tion" under the Federal law, but fail to similarly apply this analysis to section 3(f).

Therefore, I would interpret the statutory phrase "same public records" in section 3(f) to refer to the form of the public record as opposed to the information included in the public record. A request for a computer tape containing specific information does not seek the same public record that a request for a typed printout of the same information does. With the explosion of electronic information in business and government today, I can easily imagine how one could legitimately require two records, in different formats, which contain partly or wholly duplicative information. This analysis leads me to conclude that the "repeated request" language of section 3(f) is inapplicable to the case at bar.

The majority's focus on the term "recorded information" in section 3(f) further magnifies its failure to recognize the Act's clear distinction between what a "public record" is and the "information" such a record may contain. Specifically, the majority states that "the term 'public record' means, among other things, 'recorded information.' Therefore, if one generally requests recorded information, as may have happened here, that person may not request the same recorded information soon thereafter, even if the requester asks for the recorded information in a different physical format." (136 Ill. 2d at 342.) Thus, the majority apparently defines both the typed printout plaintiff received and the computer tape plaintiff requested as being examples of "recorded information" under the Act, and expressly states that a duplicative request for "recorded information" "soon thereafter" is prohibited under the Act.

This analysis violates several basic principles of statutory interpretation. "Recorded information" is only one of several enumerated formats that the General Assembly recognizes as public records. (Ill. Rev. Stat. 1987, ch,

116, par. 202(c).) When construing a legislative act, a court must determine the legislative intent from the entire statute, not just an isolated passage. (*Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 318.) By concentrating on only one of several enumerated examples of public records, the majority uses the term "recorded information" out of context, and misconstrues the legislative intent underlying the Act.

The maxim *"noscitur a sociis,"* a canon of statutory construction which means "[i]t is known from its associates" (Black's Law Dictionary 956 (5th ed. 1979)), is applicable here. *Noscitur a sociis* allows a court to ascertain the meaning of terms in a statute by reference to words associated with them in the statute. (*Virginia v. Tennessee* (1893), 148 U.S. 503, 519, 37 L. Ed. 537, 543, 13 S. Ct. 728, 734.) Thus, when two or more words are grouped together, and generally have a similar meaning but are not equally inclusive, the general term is limited and qualified by the special term. (2A N. Singer, Sutherland on Statutes and Statutory Construction §47.16 (Sands 4th ed. 1984).) This maxim is often applied where a word is capable of many meanings in order to avoid giving the statute a meaning that the legislature did not intend. *Jarecki v. G.D. Searle & Co.* (1961), 367 U.S. 303, 307, 6 L. Ed. 2d 859, 863, 81 S. Ct. 1579, 1582.

As I have already stated, section 2 defines public records in terms of formats. Specifically, section 2 lists "all records, reports, forms, writings, letters, memoranda, books, papers, maps, photographs, microfilms, cards, tapes, recordings, electronic data processing records, recorded information and all other documentary materials, regardless of physical form or characteristics" as qualifying as "public records." (Ill. Rev. Stat. 1987, ch. 116, par. 202(c).) The legislature, by specifically naming most of the common formats which public bodies use to store information, has indicated its intent to have all formats

accessible to the public. Most of the terms in the list which describe modern technological methods of storing information are very specific and concrete (*e.g.*, "microfilms" and "electronic data processing records"). The other terms, which are slightly more general in scope, define more traditional formats (*e.g.*, "writings" and "records"). Thus, the plain language of section 2(c) manifests an intent to provide for access to specific electronic formats. See Ill. Rev. Stat. 1987, ch. 116, par. 202(c).

Further, the last two items in the list, "recorded information and all other documentary materials," are general and all-inclusive, unlike the previous terms. Under *noscitur a sociis*, the context in which these last two terms appear compels the court to interpret them in light of the others. This leads to one of two conclusions. The court could view these last two terms as a single clause which the legislature intended as a "catch all," covering any possible format not already in the list. In the alternative, we could view the words "all other documentary materials" as the "catch all," and view "recorded information" as a format which the legislature intended to be a separate and distinct category.

In either case, the result in the case at bar should be the same. The undisputed facts show that plaintiff filled out a form requesting a public record containing certain information. The form provided no means for the plaintiff to specify a particular format. Plaintiff, however, did sign the portion of the form which indicated it would pay $0.10 per page for the copying of the record. Defendants responded to this request by sending the typed printout of the record. (136 Ill. 2d at 338.) Plaintiff then made a second request for the same information, this time specifying a computer tape format. (136 Ill. 2d at 338.) After plaintiff filed suit, it requested the information in computer tape format four more times. On each occasion,

defendant provided a copy of the typed printout. (182 Ill. App. 3d 941, 943.) The majority believes this scenario creates a question of fact which the trial court failed to address. (See 136 Ill. 2d at 347.) Nevertheless, the majority further intimates that if the trial court determines on remand that plaintiff's initial request was for "recorded information," the subsequent requests for the same information in a different format qualified as a "repeated request" under section 3(f) of the Act. See 136 Ill. 2d at 342.

I cannot agree. Whether this court interprets plaintiff's initial request as ambiguous, or as a specific request for a typed printout, the undisputed facts show that plaintiff's initial request was for a public record containing specific information. Defendants responded by sending a typed printout of that information, a public record which clearly fits within at least one of the specific formats listed in section 2(c). The facts also show that, regardless of what this court interprets the plaintiff's initial request to mean, the printout objectively fulfills the request as contained on the form.

Plaintiff's subsequent requests were not for printouts, but for computer tapes—a format category distinct and separate from the terms which would include a typed printout in section 2(c). No matter how the majority defines the general terms contained in section 2(c) under which the printout might be included ("records, reports, *** writings, *** papers"), there is no way to define "tapes" or "electronic data processing records" in a way that includes typed printouts. The legislature clearly intended public records such as the computer tape in the case at bar to be a distinct category under the Act, and therefore a separate and different public record from the printout—despite the fact that both public records contain substantially the same information. To accept the majority's view that both the typed printout and the

computer tape qualify as "recorded information" under section 2(c) would not only violate the maxim of *noscitur a sociis*, but would make the listing of other formats prior to "recorded information" meaningless (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 365 (statutes should be construed so that no term is rendered superfluous or meaningless)) and would frustrate the manifest legislative intent to specifically require the disclosure of electronic data processing formats. Further, such a limiting construction of the statute violates the express purpose of the Act, which is to limit restraints on the public's access to information. See Ill. Rev. Stat. 1987, ch. 116, par. 201.

I have further misgivings about the majority's statement that a person who requests recorded information "may not request the same recorded information soon thereafter, even if the requester asks for the recorded information in a different physical format." (136 Ill. 2d at 342.) Not only do I find fault with the majority's interpretation of the term "recorded information" and its failure to recognize the legislative distinction of format from information, I find insertion of the word "soon" into the analysis to be erroneous. Section 3(f) merely states that repeated requests are to be deemed unduly burdensome under the Act. (Ill. Rev. Stat. 1987, ch. 116, par. 203(f).) There is nothing in the statutory language to indicate that the passage of time has any bearing on what is a "repeated request." In fact, the majority's determination that a second request for the same information in a different format "soon" after the original request is a "repeated request" under the Act serves only to add confusion to the analysis. For example, after how long a time period is "soon"? Had plaintiff waited six months instead of a few weeks to make the second request, would that have eliminated the perceived "repeated request" problem? If the information were to

change slightly on a day-to-day basis, would a second request on the following day be too "soon"—or a repeated request for the "same" record at all? I submit that the plain language of section 3(f) focuses on whether compliance with a request actually is unduly burdensome for the public body involved, and not on how long it has been since a requester last asked for a particular collection of information. See Ill. Rev. Stat. 1987, ch. 116, par. 203(f).

Having determined that the request for the computer tape was not a "repeated request" under section 3(f), this court could then apply the rest of section 3(f)'s language to the undisputed facts in the case at bar to determine, as a matter of law, whether the request for the computer tape was "unduly burdensome" for defendants. The record reveals, and the parties stated at oral argument, that defendant regularly stores the information in the public record in question on computer tape. Plaintiff had agreed to pay all copying expenses. (See Ill. Rev. Stat. 1987, ch. 116, par. 206.) Plaintiff made no demand for the record to be produced in a specific computer program; plaintiff's request only required defendants to copy a computer tape, which was already a part of their record-keeping system, and give the copy to plaintiff. Also, the record reveals that defendants sent a new copy of the typed printout every time plaintiff submitted a new request for the computer tape. The undisputed facts show that the cost in time, materials, and labor to repeatedly send out a typed printout of the same record far outweighs the cost of sending a single copy of the record on computer tape. In light of this, I determine that plaintiff's request is anything but "unduly burdensome." I would hold as a matter of law that defendants are required to provide plaintiff with a copy of the computer tape under section 3(f).

But even if this court did determine that plaintiff's request somehow was an undue burden to defendants and that the request was "categorical" (see Ill. Rev. Stat. 1987, ch. 116, par. 203(f)) rather than (as here) for a discrete, existing compilation of records—or even if the request were actually a "repeated request" and hence presumed to be "unduly burdensome"—section 3(f) then requires us to determine if plaintiff's request was as narrowly drawn as possible and to balance the burdens placed on the public body in producing the record against the public's interest in the information in the record. The burden on defendants here is so minimal as to be inconsequential. The effort required to reproduce the computer tape is minimal, and is far less than that required to produce a typed printout of the same information. Neither party disputes the fact that the information in computer tape format is infinitely easier and cheaper for plaintiff to process and use than the typed printout is. (See 182 Ill. App. 3d at 943.) Use of this information is essential to the operation of plaintiff's organization. Thus, in light of the undisputed facts, I would hold that as a matter of law plaintiff's request is as narrowly drawn as possible, and that plaintiff's interest in the public record requested far outweighs any burden that plaintiff's request places upon defendants. Accordingly, any hypothetical "undue burden" would still not suffice to justify noncompliance with plaintiff's request.

I also disagree with the majority's conclusion that the case must be remanded to determine if defendants properly invoked any exception to their general duty to make public records available for inspection and copying. (136 Ill. 2d at 348.) My prior analysis regarding "repeated requests" proves that section 3(f) does not provide an exemption on that account from providing records under the Act (despite the majority's characterization of it as doing so), and that, for the case at bar, the question of

undue burden is a matter of law, which allows this court to decide the issue. A list of what is exempt from inspection and copying is found in section 7 of the Act (Ill. Rev. Stat. 1987, ch. 116, par. 207). However, section 7 is essentially a list of *information* which is exempt from disclosure—not formats. Because defendants have already disclosed the information in the public record to plaintiff, it seems pointless to remand the cause for a determination whether the information, already disclosed once, is in fact exempt from inspection.

Also, the defendants, at oral argument before this court, suggested that verifying computer tape for accuracy is more difficult than verifying the printout. Specifically, the defendants argued that, because the content of computer tapes cannot be determined without a computer, the wrong computer tape could be released by mistake, while anyone preparing a public record for distribution can check a typed printout to determine if the proper record is being sent. The majority states that this is another factual question which needs to be settled on remand. (136 Ill. 2d at 347-48.) Again, I cannot agree.

The computer tape's accuracy can be checked by anyone with a compatible computer equipped with the proper program. It is clear in the record that both parties regularly use computers to store and verify information. It is no more difficult than in the case of the printout for the staff of either party to verify the information on the tape through use of their own computer terminals. Indeed, because of automation, it is undoubtedly easier. As for the argument that a typed printout can be checked more readily before being sent out, I submit that both the tapes and the containers used to ship them can be properly labeled by the person copying and verifying contents of the tape without creating an undue burden on a public body such as Cook County. Also, the claim that defendants must allow plaintiff access to only

a typed printout because it is easier to verify is tied to the "general accessibility" argument in the *Dismukes* case (see 136 Ill. 2d at 340-41), which the majority properly distinguished from the Act. Besides, the Illinois Act's focus on format rather than information makes this a hollow argument.

Further, defendants' failure to follow the Act's procedures in denying plaintiff's request for the computer tape also supports the trial court's determination that defendants did not comply with the Act and therefore are required to supply plaintiff with a copy of the computer tape. The undisputed facts show that defendants failed to comply with several express requirements of the Act, refuting defendants' claim that they complied with the Act when they provided plaintiff the typed printout.

I have already explained that, even if plaintiff's subsequent requests were "repeated requests," the "repeated request" language of section 3(f) of the Act is not itself an exemption for public bodies from complying with a request for a public record. This language can form the basis for an exemption only if other specified conditions and procedural requirements are met, and the record shows that defendants did not comply with the Act's express instructions, whether or not plaintiff's request is deemed "repeated."

First, before a public body can invoke the "unduly burdensome" exemption under section 3(f), that body "shall extend to the person making the request an opportunity to confer with it in an attempt to reduce the request to manageable proportions." (Ill. Rev. Stat. 1987, ch. 116, par. 203(f).) Defendant never extended such an invitation, and I submit that the record reveals that such a conference would have proven that compliance with the request for the computer tape would not be unduly burdensome.

Second, section 3(f) requires:

"[i]f any body responds to a categorical request by stating that compliance would unduly burden its operation and the conditions described above are met, it shall do so in writing, specifying the reasons why it would be unduly burdensome *and the extent to which compliance will so burden the operations of the public body.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 116, par. 203(f).)

The record shows that, while defendants responded in writing (see 136 Ill. 2d at 339 (defendants' letter stated that the printout served as compliance)), they failed to comply with the rest of section 3(f)'s requirements. We could interpret defendants' statement in the letter that the printout fulfilled plaintiff's request for a computer tape as invoking the "repeated request" language of section 3(f), but this is not entirely clear. However, if so, defendants failed to explain the extent to which sending a copy of the computer tape would burden their operations. I suggest that this is because the undisputed facts show that compliance with the request could not have burdened defendants' operation.

Third, section 9 of the Act describes specific procedures a public body must follow when it denies a request for a public record. These procedures include notice by letter, an explanation of the reasons for denial, the names and positions of persons responsible for the denial, and an explanation of the requester's right to appeal the decision. (Ill. Rev. Stat. 1987, ch. 116, par. 209(a).) It appears from the record that defendants also failed to follow several of these procedures.

Thus, the undisputed facts show that, even if we do not consider the issues already discussed involving whether plaintiff's request was a "repeated request" under section 3(f) or whether the computer printout fulfilled defendants' obligations to disclose public records under the Act, defendants failed to follow the basic pro-

cedures of the Act. When I combine this analysis with what I have already explained regarding the clear language and intent of the Act, I see no reason to remand this case to determine if the evidence shows that defendants' response complied with the Act. Clearly, it did not, and defendants, as a matter of law, are required to comply with plaintiff's request for a computer tape.

For these reasons, I would reverse the judgment of the appellate court insofar as it reversed the circuit court's entry of summary judgment for plaintiff, and I would affirm the judgment of the circuit court. Thus, on that issue and on the issue of remanding the cause at bar for further factual determinations, I respectfully dissent.

JUSTICE CALVO joins in this partial concurrence and partial dissent.